Filed 12/17/21  P. v. Soto CA4/2

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FOURTH APPELLATE DISTRICT

## DIVISION TWO

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>v.<br><br>JOSE LUIS MEZA SOTO,<br><br>    Defendant and Appellant. | E077046<br><br>(Super.Ct.No. FWV1402590)<br><br>OPINION |

APPEAL from the Superior Court of San Bernardino County.  Bridgid M. McCann, Judge.  Affirmed.

David Zarmi, under appointment by the Court of Appeal, for Defendant and Appellant.

No appearance by Plaintiff and Respondent.

Defendant and appellant, Jose Luis Meza Soto, filed a third motion to vacate his conviction pursuant to Penal Code section 1473.7,[1] which the court effectively denied. After defense counsel filed a notice of appeal, this court appointed counsel to represent defendant.

Counsel has filed a brief under the authority of *People v. Wende* (1979) 25 Cal.3d 436 (*Wende*) and *Anders v. California* (1967) 386 U.S. 738, setting forth a statement of facts, a statement of the case, and identifying one potentially arguable issue: whether the court erred in denying defendant's first motion and in refusing to hear his third motion. We affirm.

## I. FACTUAL AND PROCEDURAL BACKGROUND

An officer initiated a traffic stop of a vehicle in which defendant was sitting in the back seat. The officer's partner observed "illegal narcotics in plain view in the back seat . . . ." The officers detained the driver and defendant. The officer's partner showed the officer "a plastic baggie, filled with a white, crystal-like substance." Through his "training and experience [the officer] immediately recognized the substance to be Methamphetamine." The substance field tested positive for methamphetamine. The officer arrested defendant.

Defendant asked why the driver was also being arrested. The officer responded that the driver had knowledge of the narcotics. Defendant replied, "'But if it's all mine, why should he get in trouble?'"

---

[1] All further statutory references are to the Penal Code unless otherwise indicated.

2

The People charged defendant with transporting methamphetamine for sale. (Health & Saf. Code, § 11379, subd. (a), count 1.) On October 27, 2014, pursuant to a plea agreement, defendant pled no contest to an interlineated offense of possession of a controlled substance. (Health & Saf. Code, § 11377, subd. (a).)[2] Defendant initialed a provision of his plea agreement providing: "I understand that if I am not a citizen of the United States, deportation, exclusion from admission to the United States, or denial of naturalization will result from a conviction of the offense(s) to which I plead guilty/no contest." Defendant also initialed a provision of the agreement providing: "I have had sufficient time to consult with my attorney concerning my intent to plead guilty/no contest to the above charge(s) . . . . My lawyer has explained everything on this Declaration to me, and I have had sufficient time to consider the meaning of each statement. I have personally placed my initials in certain boxes on this Declaration to signify that I fully understand and adopt as my own each of the statements which correspond to those boxes. Defendant signed the declaration under penalty of perjury. Defendant's trial attorney also signed the declaration reflecting that he had "personally read and explained the contents of the . . . Declaration to the Defendant . . . ."

The court asked defendant if he had read all the terms of the plea form, and defendant responded that he had. The court asked if he had sufficient time with his attorney to have his attorney answer any questions and explain everything in the declaration, and defendant said that he had. The court asked if defendant had any

---

[2] Defendant and the driver pled contemporaneously to the same charge; however, defendant pled no contest, while the driver pled guilty.

3

questions about the terms of the agreement, and he responded that he did not. The court asked trial counsel if he had sufficient time to discuss the agreement with defendant and whether defendant understood the terms he had initialed, and counsel responded affirmatively.

The court found defendant had read and understood the "declaration and plea form, [the] nature of the charges, [and] [the] consequences and punishment for the crime[] [he] [is] pleading to." In return for his plea, as provided in the plea agreement, the court dismissed the count 1 charge and placed defendant on 36 months' probation pursuant to section 1210.1.

On June 10, 2019, another attorney filed a motion to withdraw defendant's plea pursuant to section 1473.7. Counsel noted that defendant had been denied legal permanent residency status due to the instant conviction. Counsel reported that: "At the time of entry of his plea, defendant was unaware and he was not informed by his counsel that his plea would result in mandatory adverse immigration consequences. Thus, defense counsel failed to adequately investigate and to give competent advice regarding the immigration consequences of the plea." Counsel attached a "declaration" from defendant, which was not under penalty of perjury, in which defendant reported: "I was in no way advised on the legal repercussions that this plea could take on my immigration process of receiving my residency." The People filed opposition to the motion.

On August 9, 2019, the court held a hearing on the motion. The court noted at the outset that it had read all the moving papers and noted "that the statement and declaration

4

that was filed in the moving papers w[as] not under oath, so I have not considered it for the purposes of this hearing."

Defendant testified at the hearing that he was a citizen of Mexico without status in the United States. He was attempting to obtain lawful status in the United States, which was "block[ed]" due to his conviction in the instant case. Defendant asked his trial counsel if he could help him with his "status" and whether having a felony would "block me from becoming a resident, or to be—to adjust any type of status with immigration." Defendant testified that he and his trial counsel did not discuss any immigration consequences of his plea. Defendant read the plea agreement "as fast as possible"; he did not recall initialing a paragraph that gave a warning about the immigration consequences of the plea. When counsel refreshed his memory with a copy of the plea agreement, defendant recalled initialing it, but he did not understand it when he initialed it.

The People called defendant's trial counsel to the stand. Trial counsel "indicated to [defendant] that because of . . . the charges that were pending against him . . . that [defendant] could . . . be deported and denied citizenship." Trial counsel further stated: "I advised him that if he took a plea to the felony, that deportation and denial of citizenship is very likely." Trial counsel referred defendant to an immigration attorney and said: "I told him that he should contact them to be sure, and that it's quite possible if he is found guilty, he can be deported."

Trial counsel testified that he had read and discussed the contents of the plea agreement with defendant. He had read "verbatim" the immigration consequences paragraph in the plea agreement to defendant. Trial counsel had asked defendant if he

5

understood; defendant had responded that he did. Trial counsel had asked if defendant would like to proceed with the plea regardless of the immigration consequences; defendant had responded in the affirmative. Defendant had never indicated "that immigration consequences would be a deal breaker for him." Defendant's concern was that the driver "not have to take a plea of guilty to those charges."

The court found that trial counsel was more credible as a witness than defendant. The court further found, "[t]hat, in fact, [defendant] was advised of the actual immigration consequences of this plea." The court additionally found that defendant's testimony was "more self-serving than accurate. [¶] As such, I do not find that there was ineffective assistance of counsel that caused the defendant to not meaningfully understand everything that was going on at that time. . . . In this case, I'm finding [defendant] was not advised improperly, nor do I have any evidence that if he had been advised []properly, he would have done something different." The court denied the motion.

On February 16, 2021, a third defense counsel filed a second motion to vacate and dismiss defendant's conviction pursuant to section 1473.7. Counsel noted that defendant had completed his probation pursuant to section 1210.1, and his case "is dismissed for all state purposes, but not immigration purposes." In a declaration under penalty of perjury attached to the motion, defendant declared that only after successfully completing his probation did he discover that the dismissal of his case "would not be given effect for my immigration case. [¶] . . . [¶] If I was aware of the immigration consequences of my

6

plea, including that a dismissal would not be given effect in immigration court, I would have continued fighting for a disposition [that] would have been immigration-safe."

At a hearing on March 5, 2021, after an off-the-record discussion, the court noted that it appeared defendant had "already [received] an evidentiary hearing . . . and the motion was denied. After discussing it, it sounds like it may be a request for reconsideration based upon either a new theory or new evidence." The court asked defense counsel: "So are you withdrawing your motion at this point in time?" Defense counsel responded: "Yes, your Honor." The motion was withdrawn for the record. The court continued the matter "for an informal discussion regarding a potential reconsideration of the [section] 1473.7 [motion]."

On March 22, 2021, defense counsel filed a motion to dismiss defendant's case pursuant to section 1210.1. On April 7, 2021, counsel filed a third motion to vacate defendant's conviction pursuant to section 1473.7, arguing that counsel who had filed the first section 1473.7 motion had rendered ineffective assistance of counsel by failing to first request dismissal of defendant's case pursuant to section 1210.1. Defense counsel requested the court take judicial notice of all the records in defendant's case and reconsider its ruling on the initial section 1473.7 motion. Defense counsel attached the same declaration from defendant as attached to the previous motion.

On April 28, 2021, the People filed opposition to defendant's renewed section 1473.7 motion. The People argued, in part, that the court's order on the previous section 1473.7 precluded the current motion under the doctrine of res judicata. The People also requested the court take judicial notice of its file in the case.

7

At the hearing on April 29, 2021, the court noted that it had read and considered the moving papers and opposition as well as "the entirety of the court file . . . ." The court noted preemptively that "we did a [section] 1473[.7] motion previously. We took full testimony. And the Court made findings therein. This was all in 2019. [¶] The Court does not believe based on any of the information before it, that the issues that needed to be addressed in that [motion] were not addressed to the point that it rises to incompetency of counsel."

Defense counsel argued that relief under sections 1210.1 and 1473.7 "interplay with each other. Because [section] 1473.7(e)(2) does create a presumption of invalidity of the plea if there's a program which upon its completion would have resulted in its dismissal." Defense counsel alleged that the attorney who filed the prior section 1473.7 motion was incompetent for not filing a section 1210.1 motion for dismissal.

The court noted: "I've reconsidered, and I'm not inclined to change my ruling on the 1473[.7] [motion]. . . . [¶] . . . [¶] . . . The Court's findings now remain with regard to that prior 1473[.7] motion and it continues to be denied."

The People argued that the renewed section 1473.7 motion was barred under the doctrine of res judicata. The court observed that it had "previously made findings that it has significant concerns . . . involving the credibility of declarations in terms of involving the credibility of witnesses and the self-serving nature therein. [¶] . . . I do believe res judicata and to an extent collateral estoppel does apply here with regard to [section] 1437[.7] in any avenue. I do not believe that it necessarily was incompetent of [prior counsel] to not present that to the Court."

8

The court further observed: "I don't have information that the Court feels comfortable relying [on] that indicates that [prior counsel] was aware [defendant] had completed the program. . . . [¶] . . . [¶] Nothing in [defendant's] declaration indicates that he had completed the program either to the point that the Court is satisfied that any notice was given to [prior counsel] that this was an issue that needed to be addressed. [¶] . . . I do not find [prior counsel's] failure to raise the issue rises to the extent that the Court should revisit [section] 1473.7 in any way."

Defense counsel argued that it was previous counsel's responsibility to investigate defendant's case himself. Thus, there was no obligation on the part of defendant to inform prior counsel that he had completed the section 1210.1 program. Defense counsel argued that the prior motion and ruling did not have a preclusive effect on the current motion because they were not brought under the same theory. Counsel argued that if the court dismissed defendant's case pursuant to section 1210.1, the "necessary predicate for [the section] 1473.7(e)(2) presumption" would apply.

The People responded: "I guess the question really is how many times are we going to do this motion with a new theory each time with defense. That's why res adjudicata exists." The People argued that defense could not avoid the preclusive effect of the prior ruling by coming up with a new theory: "We already decided the issue and you can either appeal it or move for reconsideration within a limited timeframe. That timeframe expired in 2019. [¶] . . . [Defendant's] due process rights have been scrupulously respected and it doesn't include the right to redo it until you finally get the result you want by trying out a different theory each time."

9

The court noted: "So that we're clear, so there is no doubt in the record, this Court has already found that [trial counsel] was not incompetent. So in terms of any due process issues, we are only dealing with the issue of whether or not previous motion counsel was incompetent." The court observed that it still found defendant's statements in his declaration and testimony that he did not understand the immigration consequences of his plea uncredible. The court did not believe that "merely because a [section] 1210[.1] [motion] is granted, that the Court is then required to take action under" section 1473.7, subdivision (e)(2). "[A]s [I] previous[ly] indicated, . . . I am not going to readdress my ruling on the [section] 1473.7 [motion], even in light of the potential" section 1210.1 dismissal.

The court then addressed the section 1210.1 motion. The People did not object to the introduction into evidence of defendant's proof of completion of his probation programs. The People and defense counsel acquiesced to the court's proposal to refer that matter to the probation department to confirm whether defendant had paid all his fees prior to taking further action on the section 1210.1 motion. The court ruled that its decision on the section 1473.7 motion would not be final until it resolved the section 1210.1 motion.

After an off-the-record conference, the court noted it was requesting an expedited memorandum regarding defendant's payment of his fines and fees from the probation department. "I have tentatively indicated to both counsel that if, in fact, all fines and fees were paid, the Court will be granting the [section] 1210.1 motion, even" though it would not necessarily then grant relief pursuant to section 1473.7, subdivision (e)(2).

10

On May 7, 2021, the "court . . . reconsidered its ruling on the [section] 1473[.7] motion based upon the defendant's request and is not convinced the previous ruling should be modified." However, upon advisement from the probation department that defendant had paid all his fines and fees, the court granted defendant's section 1210.1 motion for dismissal.

## II. DISCUSSION

We offered defendant an opportunity to file a personal supplemental brief, which he has not done. We recognize that one panel of this court has held that in uncontested appeals from postjudgment orders, there is no reason to conduct a *Wende* review of the record and that such appeals should be dismissed by order. (*People v. Scott* (2020) 58 Cal.App.5th 1127, 1131-1132, review granted Mar. 17, 2021, S266853 (but see dis. opn. of Miller, J.); accord *People v. Cole* (2020) 52 Cal.App.5th 1023, 1028, review granted Oct. 14, 2020, S264278 ["*Wende*'s constitutional underpinnings do not apply to appeals from the denial of postconviction relief."]; accord *People v. Figueras* (2021) 61 Cal.App.5th 108, review granted May 12, 2021, S267870.) We respectfully disagree.

We agree with another panel of this court, which held that in uncontested appeals from the denial of a postjudgment petition, "we can and should independently review the record on appeal in the interests of justice." (*People v. Gallo* (2020) 57 Cal.App.5th 594, 599 (but see dis. opn. of Menetrez, J.); accord *People v. Flores* (2020) 54 Cal.App.5th 266, 269 ["[W]hen an appointed counsel files a *Wende* brief in an appeal from a summary denial of a section 1170.95 petition, a Court of Appeal is not required to independently review the entire record, but the court can and should do so in the interests of justice."];

11

see *People v. Allison* (2020) 55 Cal.App.5th 449, 456 ["[W]e have the discretion to review the record in the interests of justice."].)  This procedure provides defendants an added layer of due process while consuming comparatively little in judicial resources. Pursuant to the mandate of *People v. Kelly* (2006) 40 Cal.4th 106, we have independently reviewed the record for potential error and find no arguable issues.

### III.  DISPOSITION

The judgment is affirmed.

NOT TO BE PUBLISHED IN OFFICIAL REPORTS

McKINSTER  
Acting P. J.

We concur:

MILLER  
J.

CODRINGTON  
J.